UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RECO PRIANTO,<br><br>    Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>    Defendant. | Case No. 13-cv-03461-TEH<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

This matter came before the Court on April 28, 2014, on the motion of Defendant Experian Information Solutions, Inc. ("Experian") for judgment on the pleadings. Having carefully considered the written and oral arguments of the parties, and the relevant law, the Court GRANTS Experian's motion for the reasons discussed below.

**BACKGROUND**

On or about April 11, 2007, Plaintiff Reco Prianto ("Plaintiff") purchased a single family residence for his personal use in Sacramento, California, and lived in it for some time thereafter. First Amended Complaint ("FAC") ¶ 6, Docket No. 14. Plaintiff financed the purchase of the home with loans from Aurora Bank FSB, secured by a first and second deed of trust. *Id*. ¶ 7. The loan in second place, which was for $97,800, was later transferred or sold to Defendant Heritage Pacific Financial LLC ("Heritage"). *Id*. ¶ 8. Plaintiff stopped making the monthly payments on the loans in or about September 2008; thereafter, the holder of the first deed of trust initiated foreclosure proceedings that resulted in a trustee's sale that took place on January 20, 2009. *Id*. ¶ 9. The effect of the

foreclosure was to extinguish the loan secured by the second deed of trust, rendering its holder, Heritage, a "sold out junior lienholder." *Id*. ¶ 10.

Plaintiff alleges that the loan held by Heritage is subject to one of California's anti-deficiency statutes, set forth at section 580b of the California Code of Civil Procedure ("section 580b"). *Id*. ¶¶ 13-14. Because section 580b provides that no deficiency judgment lies after a foreclosure for a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property, Plaintiff argues that Heritage cannot legally collect on the loan even if it were to sue him. *Id*. ¶ 14.

Heritage furnishes credit information on its customers to the three national credit reporting agencies ("CRAs") – Equifax LLC, Trans Union LLC, and Experian. *Id*. ¶ 11. As a "furnisher" of credit information, beginning in June 2011, Heritage reported to the CRAs that Plaintiff's loan account was "past due in the amount of $96,601" (the "Heritage loan"). *Id*. ¶ 12. Plaintiff asserts that because the Heritage loan "cannot be enforced," Heritage's reports to the CRAs were misleading and incomplete. *Id*. ¶ 16. Potential creditors who access Plaintiff's credit reports, in the process of making decisions whether to extend credit to Plaintiff, will erroneously believe that Plaintiff may be forced to pay $96,601 "through legal process" should Heritage seek a judgment against him, when in fact, Plaintiff "is in no danger of ever having to pay anything on the account." *Id*. Additionally, banks and other financial institutions – which typically use computer algorithms that rely heavily, if not exclusively, on the applicant's credit scores, and data in the applicant's credit application and credit reports prepared by CRAs, including Experian – will inform potential creditors that Plaintiff may be forced to pay $96,601 to Heritage. *Id*. ¶¶ 17-18. This reporting, Plaintiff asserts, misleads potential creditors who will either offer credit only on unfavorable terms or will reject Plaintiff's application altogether, and is incomplete because the reporting fails to note that he cannot be made to pay the $96,601 or any lesser amount to Heritage. *Id*. ¶ 19.

In January 2012, and on May 5 and 20, 2013, Plaintiff sent dispute letters to the CRAs, including Experian, in which he stated that Heritage's credit reporting violated the

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et. seq.*, because it was misleading and caused creditors to believe he could be held liable for $96,601 when, in fact, that was not legally possible. *Id.* ¶ 20. After receiving the dispute letters, the CRAs sent automatic customer dispute verification requests ("ACDVs") to Heritage, informing it that Plaintiff disputed Heritage's reporting on the account. *Id.* ¶ 21. Upon receipt of the ACDVs, Heritage was obligated to conduct a reasonable investigation of the dispute and to report the results of its investigation to the CRAs, but Plaintiff alleges that Heritage failed to do so, and instead merely reported the same information it had previously reported to the CRAs. *Id.* ¶¶ 22-23. After receiving Heritage's responses to the ACDVs, the CRAs were obligated to conduct a reasonable investigation of the dispute. *Id.* ¶ 24. Trans Union and Equifax corrected their reports to reflect that no money was past due on the account; Experian failed to correct its report on the account. *Id.* Plaintiff asserts that Experian's reporting of the Heritage loan has significantly reduced his credit scores, such that he has been unable to obtain financing to purchase a home, and has suffered emotional distress. *Id.* ¶¶ 15, 25-26.

Based on the foregoing conduct, Plaintiff asserts against Experian in his Third Claim for Relief violations of the FCRA's accurate reporting requirement, 15 U.S.C. § 1681e(b), and reinvestigation provision, 15 U.S.C. § 1681i. *Id.* ¶¶ 43-52. Plaintiff also asserted claims against Heritage under the FCRA and the California Consumer Credit Reporting Act, California Code of Civil Procedure § 1785.25(a), but stipulated to dismiss Heritage from this suit on January 23, 2013. *See* Docket No. 34. Thus, Plaintiff's only remaining claim is that Experian's reports on the Heritage loan were incomplete and misleading to potential creditors because the reports did not remove or otherwise explain the true, non-collectible nature of the Heritage debt.

**LEGAL STANDARD**

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ.P. 12(c). Motions filed pursuant to

3

1   Rule 12(b) and Rule 12(c) differ in the time of filing but are "functionally identical."
2   *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  In ruling on
3   either motion, a court must "accept all material allegations of fact as true and construe the
4   complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles
5   Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  A dismissal under either rule "can be based on
6   the lack of a cognizable legal theory or the absence of sufficient facts alleged under a
7   cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.
8   1990).

    To survive a motion for judgment on the pleadings, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the deficiencies in the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

### DISCUSSION

Experian's motion for judgment on the pleadings asks whether, as a matter of law, a CRA may have any liability under certain provisions of the FCRA for reporting the existence of a consumer's section 580(b) debt.  The Court concludes, that under the facts alleged, Plaintiff's claims fail as a matter of law.  The Court, therefore, GRANTS Experian's motion for the reasons discussed below.[1]

---

[1] Experian's motion for judgment on the pleadings cited to portions of the initial complaint filed in this case, as opposed to the FAC.  Experian's alleged misconduct, however, is substantially similar in both complaints, and Plaintiff did not object on this basis, so the Court may properly analyze the motion and does so based on the allegations in the FAC.

4

## I. Violations of 15 U.S.C. § 1681e(b) (Accurate Reporting) & § 1681(i) (Reasonable Reinvestigation)

Congress passed the FCRA to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Because CRAs "have assumed a vital role in assembling and evaluating consumer credit" information, the FCRA sought to insure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3)-(4).

Under section 1681e(b), CRAs have a duty to ensure the accuracy of the report. Section 1681e(b) provides:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b). "Liability under § 1681e(b) is predicated on the reasonableness of the [CRA]'s procedures in obtaining credit information," but to "make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing *inaccurate* information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (emphasis added). "If he fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation of [§ 1681e(b)], and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991).

Section 1681i(1)(A) obligates CRAs to reinvestigate disputes when the completeness or accuracy of an item of information has been challenged. Section 1681i(1)(A) provides:

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the [CRA] shall, free of charge, conduct a reasonable

> reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i (1)(A). A consumer filing suit under section 1681i(1)(A) must also make a "prima facie showing of inaccurate reporting." *Dennis v. BEH–1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008).

Thus, under both sections 1681e(b) and 1681i(1)(A), Plaintiff must make a prima facie showing that the report generated by the CRA contained "inaccuracy." *See id.* The Court is guided by the maxim of statutory construction that "similar terms appearing in different sections of a statute should receive the same interpretation," *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (citing *United States v. Nordbrock*, 38 F.3d 440, 444 (9th Cir. 1994)). The Ninth Circuit has explained that "an item on a credit report can be 'incomplete or inaccurate' within the meaning of the FCRA's furnisher investigation provision, 15 U.S.C. § 1681s–2(b)(1)(D), 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Id.* at 890 (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)). Courts have therefore applied this "patently incorrect or materially misleading" standard to claims arising under various provisions of the FCRA that involve the accuracy of information. *See, e.g.*, *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 37(1st Cir. 2010) (deeming the term "inaccurate" in section 1681i(a) to be "essentially the same" as the term "incomplete or inaccurate" in section 1681s–2(b)); *cf. Carvalho*, 629 F.3d at 890 (applying patently incorrect or materially misleading standard to reinvestigation claims against CRAs under a similar provision of California's Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.16). Thus, Plaintiff must allege facts sufficient to state a claim that a CRA published a report containing patently inaccurate or materially misleading information in order to state a prima facie case for relief under sections 1681e(b) and 1681i(1)(A).

### A. Patently Inaccurate

Plaintiff maintains that Experian's reporting of the Heritage loan was inaccurate because the loan was subject to the anti-deficiency provision of section 580b. Plaintiff argues that "[w]hether the 'debt' was 'eliminated' or 'extinguished' is an academic question that need not detain the Court. Prianto had no liability to Heritage." Opp'n at 6, Docket No. 44. To the extent Plaintiff claims that Experian is liable for reporting "inaccurate" information by reporting the existence of the Heritage loan, his claim fails as a matter of law.

Section 580b bars a creditor from seeking a deficiency judgment on the balance owed from a home loan under certain circumstances. In June 2011, when Heritage reported to the CRAs that Plaintiff's account was past due in the amount of $96,601, section 580b stated:

> No deficiency judgment shall lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser.

Cal. Civ. Proc. Code § 580b (2012).[2]

---

[2] The California Legislature subsequently revised Section 580b, and as of January 1, 2013, section 580b stated, in relevant part: "No deficiency judgment shall lie in any event for the following . . . (2) Under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein." Cal. Civ. Proc. Code § 580b(a)(2) (2013). This version of section 580b was effective until December 31, 2013. Thus, either the 2012 or 2013 versions of section 580b, which are substantially similar in relevant part, were in effect when Plaintiff sent dispute letters to Experian and when Plaintiff initiated this lawsuit on June 25, 2013. The Court notes that the California Legislature again revised section 580b, effective January 1, 2014, to stated, in relevant part: "no deficiency shall be *owed* or *collected*, and no deficiency judgment shall lie, for any of the following: . . . (2) Under a deed of trust or mortgage

7

"A deficiency judgment is a personal judgment against the debtor mortgagor for the difference between the fair market value of the property held as security and the outstanding indebtedness." *Herrera v. LCS Financial Serv. Corp.*, No. C09-02843TEH, 2009 WL 2912517, at *3 (N.D. Cal. 2009) (analyzing section 580b in context of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, rather than the FCRA) (citation and quotation marks omitted). Section 580b prohibits a private action to recover a debt on a security, for which the security has been lost or declined in value, where the security is a purchase money deed of trust or mortgage. *See id.* (*citing Jeanese, Inc. v. Surety Title & Guaranty Co.*, 176 Cal. App. 2d 449, 454 (1959)). The vendor, in such a case, may look only to the security itself, and may not obtain a personal judgment. *See id.* Section 580b's bar against obtaining a deficiency judgment also "precludes a vendor in second position from bringing an action on the note after the security has been rendered valueless due to sale by the senior lienor." *Lawler v. Jacobs*, 83 Cal. App. 4th 723, 732 (2000) (citing *Brown v. Jensen*, 41 Cal. 2d 193, 197-98 (1953)). "If the security is exhausted, it does not mean that the debt ceases to exist – it means only that the debt is unrecoverable because there can be no deficiency judgment against the debtor." *Herrera*, 2009 WL 2912517, at *3 (citing *Brown*, 41 Cal. 2d at 198).

Thus, this Court in *Herrera* previously held that section 580b:

> by its own terms, eliminates a creditor's ability to seek a deficiency judgment, *but it does not eliminate the underlying debt*. The fact of that debt's existence may be entirely

given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein." Cal. Civ. Proc. Code § 580b(a)(2) (2014) (emphasis added). In California, however, no part of the Code of Civil Procedure applies retroactively unless "expressly so declared." Cal. Civ. Proc. Code § 3; *Evangelatos v. Superior Court*, 44 Cal.3d 1188, 1209 (1988) ("[A] statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application."). Thus, there is no indication that the 2014 version of section 580b applies to Plaintiff's claims.

8

> theoretical, given that section 580b closes the courthouse door on any creditor's collection efforts against the mortgagor. However, the claim that section 580b erases the debt, barring [a creditor] from seeking payment in any manner, must fail as a matter of law.

2009 WL 2912517 at *8 (emphasis added). While the analysis in *Herrera* involved the Fair Debt Collection Practices Act, the result in the context of the FCRA is the same: the fact that Plaintiff's debt was subject to section 580b does not eliminate the underlying debt. Plaintiff cites to no authority that suggests reporting the existence of this underlying section 580b debt violates California law or the FCRA.

In fact, courts that have examined section 580b debt in the context of the FCRA have held that because section 580b does not extinguish a consumer's underlying debt, there can be no liability for a furnisher accurately reporting the existence of that debt unless there is a dispute about the debt's patent or facial accuracy. *See Johnson v. Wells Fargo Home Mortgage, Inc.*, No. EDCV 13-01044-VAP, 2013 WL 7211905, at * 7 (C.D. Cal. Sept. 13, 2013) (holding that furnisher cannot be liable as a matter of law for accurately reporting balance of second mortgage subject to section 580b); *Abdelfattah v. Carrington Mortg. Services LLC*, No. C-12-04656-RMW, 2013 WL 495358, at * 3 (N.D. Cal. Feb. 7, 2013) (analyzing similar anti-deficiency provision set forth at California Code of Civil Procedure section 580d, and holding that section 580d does not preclude the reporting of a deficiency following non-judicial foreclosure, but allowing inaccuracy claims to proceed to summary judgment where amount owed in dispute); *Murphy v. Ocwen Loan Servicing, LLC*, No. 2:13-CV-00555-TLN, 2014 WL 651914, at *7-8 (E.D. Cal. Feb. 19, 2014) (dismissing claim that furnisher's reporting of section 580b second mortgage debt violated the FCRA where plaintiffs failed to plead that they actually paid off the second mortgage or that the reported amount was facially incorrect or disputed).

Plaintiff does not dispute that the debt belongs to him or that the amount – $96,691 – is actually incorrect. Plaintiff has not cited, and the Court has not been able to find, any case holding that a furnisher or CRA may be held liable for accurately reporting the mere existence of section 580b debt. *Accord Murphy*, 2014 WL 651914, at *6 (same).

Extending the reasoning of *Johnson*, *Abdelfattah*, and *Murphy*, there is no reason that a CRA, like a furnisher, can be liable for accurately reporting the existence of section 580b debt. *Cf. Carvalho*, 629 F.3d at 891 (finding no cognizable claim for inaccurate reporting exists where information on credit report is facially or "patently" correct). Thus, Plaintiff's claim that Experian violated the FCRA by reporting the existence of the Heritage debt fails because Plaintiff does not dispute the debt's existence or its facial or patent accuracy.

### B. Materially Misleading

Plaintiff argues that Experian's reporting of the existence of the Heritage loan, though technically accurate, was nonetheless materially misleading because "it can be expected to adversely affect credit decisions." Opp'n at 8 (citing *Carvalho*, 629 F.3d at 890) (citation omitted). Plaintiff contends that prospective creditors who accessed Plaintiff's credit report in the process of making credit decisions would reject his application or offer credit on unfavorable terms because they "would believe he owed and may be forced to pay $96,601 through legal process when in fact he was in no danger of ever having to pay anything." FAC ¶¶ 16-18. Defendant argues that the FCRA imposes no obligation on CRAs to assess the legal validity of the underlying debt or otherwise requires CRAs to refrain from reporting facially accurate information simply because a consumer asserts he has a legal defense to the debt.

District courts have recognized that FCRA claims regarding a *furnisher's* reporting of section 580b debt may be cognizable under this "technically accurate but materially misleading" standard. *See, e.g.*, *Johnson*, 2013 WL 7211905, at * 8 (holding that "failing to report that a debt is not subject to a deficiency judgment is also potentially misleading."). Plaintiff, however, dismissed his claims against Heritage, the furnisher, and proceeds here only against Experian, a CRA. The parties do not cite, and the Court has not found, any case holding that a CRA, such as Experian, can be held liable for reporting the existence of debt subject to section 580b under this technically accurate but materially misleading theory of inaccurate reporting. However, controlling Ninth Circuit law

forecloses liability for a CRA where the underlying debt is subject to *latent* inaccuracy or when the inaccuracy of the debt turns on resolution of disputed legal questions. These considerations squarely implicate Plaintiff's claims here.

In *Carvalho v. Equifax Information Services, LLC*, Carvalho, who brought claims under the analogous California's Consumer Credit Reporting Agencies Act, challenged a CRA's reporting of a past due collection account arising from a disputed medical bill as inaccurate. 629 F.3d at 882-83. Carvalho did not dispute that the account belonged to her or that the amount owing was facially accurate. Because the relevant facts were correctly reported, there was no "patent" error in her credit report. *Id*. at 891. Rather, the court construed her claim as one of "latent" inaccuracy. Carvalho argued the collection account for the debt, while technically accurate, was "misleading" because she was not legally obligated to pay the bill until the medical services provider properly billed her insurer, based on her interpretation of the medical services agreement. On this basis, she argued that the CRA's reporting that she was past due on the debt was misleading because "potential creditors would mistakenly assume from the derogatory item that she is uncreditworthy." *Id*. The Ninth Circuit rejected her theory of CRA liability.

First, the court noted that "a consumer who avails herself of a good or service but defaults on payment would be considered less creditworthy than one who does not, regardless of how legally sound her reasons for default are. That she defaulted is certainly relevant to potential creditors and is precisely the type of information that a credit report is meant to supply." *Id*. Second, the court rejected Carvalho's contention that CRAs "unfairly malign the creditworthiness of innocent consumers by reporting disputed debts without undertaking a searching inquiry into the consumer's legal defenses to payment." *Id*. The "fundamental flaw" in this depiction of the CRA's reinvestigation duty, the court reasoned, "is that [CRAs] are not tribunals. They simply collect and report information furnished by others. Because CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Id*. (citing *Saunders v. Branch*

11

*Banking & Trust Co. of Va.,* 526 F.3d 142, 150 (4th Cir. 2008); *see also DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (concluding that plaintiff's attack on the validity of a disputed mortgage "turns on questions that can only be resolved by a court of law," and as such,"[t]his is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a [CRA] is neither qualified nor obligated to resolve under the FCRA."). On this basis, the *Carvalho* court concluded that a "CRA is not required as part of its reinvestigation duties to provide a legal opinion on the merits. . . . Nor is a CRA obligated not to report any information about the disputed item simply because the consumer asserts a legal defense." *Id*. at 892.

Accordingly, the *Carvalho* court held that the plaintiff failed to establish the inaccuracy element of the prima facie reinvestigation claim because she could not show patent inaccuracy, and her latent inaccuracy claim failed because it hinged on the legal validity of her underlying debt, the merits of which the CRA was not obligated to assess.

As discussed above, Plaintiff does not argue that Experian's reporting of his section 580b debt is facially inaccurate. Instead, Plaintiff attacks the latent accuracy of the debt because, while it is technically accurate, he contends that Experian's reporting of the debt's existence without explaining that it is subject to section 580b's anti-deficiency bar is materially misleading.

The Ninth Circuit's reasoning in *Carvalho* compels the Court to find that Plaintiff's claims against Experian under this materially misleading theory fail as a matter of law. First, this Court's previous holding in *Herrera* recognized that while section 580b eliminates a creditor's ability to obtain a deficiency judgment, it does not eliminate the underlying debt. 2009 WL 2912517 at *8. Regardless of how legally sound Plaintiff's reasons for default may be, the existence of the default or the underlying debt, is "relevant to potential creditors and is precisely the type of information that a credit report is meant to supply." *Carvalho*, 629 F.3d at 891; *see also Abdelfattah*, 2013 WL 495358, at * 2 ("To preclude the reporting of a deficiency would seem inconsistent with the purpose of a credit

report, namely to provide accurate credit information to potential creditors.").[3]

Second, Plaintiff does not allege "a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather [he raises] a legal issue that a credit agency such as [Experian] is neither qualified nor obligated to resolve under the FCRA." *DeAndrade*, 523 F.3d at 68. Experian is not "equipped to adjudicate" the legal dispute between Plaintiff and Heritage, assess whether the Heritage loan is in fact subject to section 580b, and whether Plaintiff may successfully invoke the anti-deficiency defense in the absence of an actual lawsuit by Heritage to collect upon its loan: in other words, Plaintiff is not permitted to launch a "collateral attacks on the legal validity" of the Heritage loan as a FCRA reinvestigation claim. *Carvalho*, 629 F.3d at 892. To hold otherwise would require CRAs like Experian to decline to report information about the disputed item "simply because the consumer asserts a legal defense," a proposition *Carvalho* squarely rejects. *Id.*

Consumers who are dissatisfied by a reinvestigation may file a brief explanatory statement to be reported along with the disputed item. *See* 15 U.S.C. § 1681i(b)-(c). Plaintiff does not allege that he filed such a statement. As the Ninth Circuit noted in *Carvalho*, "a consumer who disputes the legal validity of an obligation should do so directly at the furnisher level. If successful, the consumer can clear her credit report without the need for any explanatory statements. That Carvalho failed to do so is no fault of the CRAs." 629 F.3d at 892. Here, Plaintiff dismissed Heritage, and does not appear to have otherwise disputed the obligation at the furnisher level via legal process so as to create an actionable claim against Experian. *See DeAndrade*, 523 F.3d at 68 (emphasis in

---

[3] *But see Johnson,* 2013 WL 7211905, at * 8 ("A consumer's failure to pay a debt that is not really due 'does not reflect financial irresponsibility,' and thus the omission of the disputed nature of a debt could render the information sufficiently misleading so as to be 'incomplete or inaccurate' within the meaning of the statute." (quoting *Saunders*, 526 F.3d at 150)). *Johnson*, however, applied the materially misleading standard to the reporting duties of *furnishers*, not CRAs. As such, *Johnson* does not alter the Court's conclusion, following *Carvalho*, that CRAs do not have a duty to adjudicate a claim of latent inaccuracy merely because the consumer asserts the debt is subject to a legal defense.

original) (determining whether the plaintiff was entitled to stop making loan payments because the plaintiff's signature on the mortgage was forged was a question for the court to resolve; if the court determined that the mortgage was invalid and the CRA "continued to report it as a valid debt, *then* DeAndrade would have grounds for a potential FCRA claim."). Accordingly, Plaintiff fails to state claim against Experian under a materially misleading theory of inaccurate reporting under the FCRA.

Because Plaintiff has failed to meet his prima facie burden to show inaccurate reporting, the Court does not reach Plaintiff's contentions about the inadequacy of Experian's reasonable reinvestigation. *See* Opp'n at 9-11; *cf. Dennis*, 520 F.3d at 1069 (citing *Williams v. Colonial Bank*, 826 F. Supp. 415, 418 (M.D. Ala. 1993)) (no duty to reinvestigate triggered where report accurately reflects the status of information in public records). As any amendment could not overcome the fact that the challenged information was not patently inaccurate, and Experian had no duty to resolve the disputed legal validity of the underlying debt or refrain from reporting on it, amendment based on these facts would be futile. Accordingly, the Court GRANTS Experian's motion for judgment on the pleadings WITHOUT LEAVE TO AMEND.

## II. Plaintiff's Request to Consider Extrinsic Evidence

Plaintiff requested that the Court consider certain evidence submitted with his opposition to Experian's motion. *See* Opp'n at 5-6 (citing Prianto Decl., Docket No. 45 & Anderson Decl., Docket No. 46). Judgment on the pleadings is limited to material included in the pleadings, otherwise, the proceeding is converted to summary judgment. *See Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health*, 654 F.3d 919, 925 (9th Cir. 2011). District courts have "discretion not to convert the motion for judgment on the pleadings into a summary judgment motion." *Id*. (citing *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007)). The Court declines to exercise its discretion to consider Plaintiff's extrinsic evidence and thereby convert the proceedings to summary judgment. The extrinsic evidence submitted by Plaintiff addresses additional

facts relating to Plaintiff's communications with Heritage, Experian, and the reasonableness of Experian's investigation procedures. These facts are not relevant to addressing the threshold determinations here: that a CRA cannot be liable for reporting facially accurate information and need not adjudicate the merits of underlying legal disputes. Plaintiff's evidence is therefore irrelevant to the Court's resolution of the prima facie question of whether the information was accurate. Accordingly, declining to consider this evidence does not prejudice Plaintiff, as none of the evidence would alter the Court's conclusion that, as a matter of law, Experian is not liable under the FCRA for the conduct Plaintiff alleges.

**CONCLUSION**

For the foregoing reasons, Experian's motion for judgment on the pleadings is GRANTED WITHOUT LEAVE TO AMEND. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: 07/10/14

_____
THELTON E. HENDERSON
United States District Judge